[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO ACQUIT
The defendant has moved for a new trial pursuant to § 42-53 of the Rules of Practice. He was convicted by a jury of the crime of Assault 2nd on a Peace Officer in violation of § 53a-167(c)(a) of the General Statutes. He contends the verdicts were against the evidence and the court erred in not granting an earlier motion for acquittal at the end of the state's case. It is also urged that the court should not have quashed the defendant's first subpoena for Police Officer Garfield's personnel records.
Additionally, pursuant to Practice Book Rules 42-43, 42-50 and 42-51, the defendant has moved for judgment of acquittal post verdict on the same grounds.
The motions are each denied.
Giving the evidence the construction most favorable to sustaining the verdict, as the court is required to do in reviewing these post verdict motions, the court finds there was sufficient evidence to permit the jury to find beyond a reasonable doubt as it did. Additionally, the subpoena first served for the arresting officer's personnel file was too broad.
The court will first turn to the claim of evidentiary insufficiency.
The jury could have reasonably found that Police Officer Garfield of the Milford Police Department received a radio call while on patrol concerning a shoplifting incident in which the person alleged to be responsible was carried away from the store in an identified red car which the officer saw and followed on CT Page 15175 the Connecticut Turnpike, I-95. The defendant driver did not stop immediately upon activation of flashing lights on the police cruiser, but eventually did stop his car in Stratford at a point on I-95 near the Stratford railroad station. After being asked to leave the car and taken to a point near a fence, the defendant ran away from the officer who chased him on foot. There was adequate evidence before the jury that Officer Garfield was a peace officer and member of an organized local police department, and at the time of his stopping of the defendant's car, he was on duty and officially responding to a call. There was sufficient evidence from which the jury could have found that a reasonable person in the same circumstances as the defendant should reasonably have identified the policeman as a peace officer since Garfield emerged from a marked police car in uniform.
There was also enough evidence from which the jury could have inferred that Rogue possessed the necessary specific intent to prevent a reasonably identifiable peace officer from performing his duty of taking the defendant into custody and putting him into the back seat of the police car and investigating the Milford crime. The jury could have reasonably found that the police officer was acting in good faith in carrying out the duty of investigating the crime which had been reported at a nearby store and in pursuing suspects. There was also sufficient evidence that the stop of the defendant who was driving the car of the same description as that used for the getaway was in performance of Garfield's official duties as a Milford Police Officer. The jury could have found that Officer Garfield told the defendant to stop when he ran over the highway embankment but that the defendant continued to run because, as he himself said, he feared he would be arrested and go back to jail again. The jury could also have concluded that the defendant struggled with the policeman when Garfield caught up with him and the defendant physically caused Officer Garfield pain in the knee, back and shoulder which had to be palliated with prescription analgesics and that the injuries were serious enough to warrant his absence from his police duties for one week because of his physical impairments. The jury also could have determined that the state proved Mr. Rogue was not acting in self defense in that, although he could have run from the policeman by a ramp near the Stratford train station platform, he chose instead to grapple with the policeman on the platform in an attempt to throw the policeman onto the main line tracks of the railroad line.
The court will next turn to the impeachment issue. CT Page 15176
The first subpoena issued by the defendant to the City of Milford commanded the police chief to bring to court the entire "personnel file for Officer James Garfield." The court quashed that subpoena in response to the City's motion. It was overly broad. ". . . [I]n resolving requests for disclosures, routine access to personnel files is not to be had." State v.Januszewski, 182 Conn. 142, 173.
The Januszewski court held that:
 Requests for information should be specific and should set forth the issue in the case to which the personnel information sought will relate. The trial court should make available to the defendant only information that it concludes is clearly material and relevant to the issue involved." Id.
The first subpoena was general, not specific, and referred to no issues in the case to which the personnel information might relate. It was therefore properly quashed.
The court granted defense counsel time to serve a new subpoena. In quashing the first subpoena, the court made it clear that there was a balance to be struck between the right of the police officer to confidentiality of his personnel records and the right of the defendant to effectively cross examine and impeach state witnesses against him. The court indicated that the future requests should be specific and relate to a particular issue in the case.
Another subpoena was issued commanding that the following be brought to court by the police chief.
 Personnel file for Officer James Garfield including any material relating to instances of excessive force statements in reports turning out to be false; Disciplinary actions relating to misconduct; Any material directly related to the incident of 8/31/97 that is the subject of arrest of Richard Rogue; Incidents that occurred prior to 8/31/97 or after that related to his behavior in this incident; Instances where anything that Officer Garfield reported was questioned by superiors; Injuries CT Page 15177 received prior to incident on 8/31/97 that relate to knee, back, face, shoulders; Anything related to credibility."
The court had previously ruled that a category of requests relating just generally to credibility would not in its opinion comply with the specificity required by Januszewski. The defendants then delivered a sheaf of documents to the court, all of which were in response to the particularized subpoena, and all of which were marked for identification and sealed. They were then reviewed in camera by the court and all were disclosed to the defense attorney and prosecutor over the objection of the state. In the court's opinion, this procedure adequately protected the defendant's right of fair trial.
The defendant urges that, in any criminal case in which a police witness may testify, even post Januszewski, the entire personnel record of the police witness is fair game with respect to what may be subpoenaed rather than only those portions relating to issues in the case and it all must be marked, at least for identification, and reviewed in camera by the trial judge. The court's first observation is that such a result would render the Supreme Court's rule and the balance it seeks to strike in such cases between the defendant's rights and the officer's confidentiality meaningless. A defendant knows through the information the nature of the charges against him, the necessary elements of the crime that the state must prove, and the defenses he may offer. In this case, there was a long form information detailing what the state intended to prove. This provides a sufficient context for the defendant to particularize a subpoena to the specific case issues to which the requested personnel information will relate, bearing in mind that impeachment as to collateral matters is not allowed.
Furthermore, adoption of the rule the defendant suggests wherein the personnel file data is all filed in a public forum, albeit under seal, without any prior particularization of the material requested, as Januszewski suggests, discourages effective and vigilant law enforcement. Only the police officer who makes arrests would expose himself to the embarrassment of raw data, false complaints and true or untrue personal information from his file being placed in another public repository and viewed in camera by others without prior particularization of the request limiting the data to that relating to real issues in the case. CT Page 15178
None of the materials disclosed under the court's order were used in cross examination. The defendant had a full opportunity to cross examine and to impeach the officer and was free to access the panoply of available criminal discovery afforded to those accused of crimes within the state. A full, complete and effective cross examination of Garfield occurred.
Since in all respects the defendant was afforded a fair trial and the evidence sufficed to permit the jury to find as it did, the Motion to Acquit and Motion for New Trial are denied.
Flynn, J.